UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNNE and CHARLES T. CROSS

    Plaintiffs,

v.                                      Case No. 8:06-cv-00429-SDM-AEP

WYETH, INC. (f/k/a AMERICAN
HOME PRODUCTS); et al.,

    Defendants,
_____/

**DEFENDANTS' MOTION FOR BIFURCATION OF
COMPENSATORY AND PUNITIVE ISSUES**

    Defendants, Wyeth LLC (f/k/a Wyeth Inc. and American Home Products), Wyeth Pharmaceuticals Inc., incorrectly named herein as Wyeth Pharmaceuticals (f/k/a Wyeth-Ayerst Pharmaceuticals) (collectively "Wyeth"), Pharmacia & Upjohn Company LLC, Pharmacia & Upjohn LLC, Pharmacia Corporation (collectively "Pharmacia/Upjohn") (hereinafter collectively referred to as "Defendants")[1], by and through undersigned counsel and pursuant to Fed. R. Civ. P. 42(b) and Middle District of Florida Local Rule 3.01, hereby file their Motion for Bifurcation of Compensatory and Punitive Issues, and state as follows:

**INTRODUCTION**

    Plaintiffs allege that use of certain hormone therapy medications caused Plaintiff, Lynne Cross, to develop breast cancer. In their five-count Complaint Plaintiffs allege: Negligence (Design Defect) [Count I]; Strict Products Liability (Failure to Warn) [Count II]; Negligent

---

[1] On March 18, 2011, the Court entered an Order dismissing with prejudice Defendant Pfizer Inc. from this action. [D.E. 88].

648846 v2

Misrepresentations [Count IV][2]; Corporate Responsibility: Joint Ventures, Parent/Subsidiaries, and/or Successor Corporations [Count V]; and Loss of Consortium [Count VI]. Plaintiffs also seek punitive damages.

Defendants move for bifurcation of the trial of this case so that the same jury can sequentially address Plaintiffs' claims for compensatory damages and then, if necessary, Plaintiffs' punitive damages claim. Specifically, Defendants propose that the trial be divided into Phase I, a determination of compensatory liability and compensatory damages, if any, to be followed if needed by Phase II, a determination of punitive liability and punitive damages, if any. As shown below, bifurcation is necessary to avoid undue prejudice to Defendants and to enhance judicial efficiency.

Bifurcation will protect against the prejudicial "spillover" effects of having punitive evidence and argument adversely infect the jury's verdict on compensatory liability and compensatory damages. Bifurcation will also prevent the jury from considering any evidence of alleged bad conduct advanced by Plaintiffs that is unrelated to the facts of their case and unlike the conduct that is purported to have caused them harm. While Defendants emphatically contest the admissibility of such evidence because it concerns "dissimilar acts, independent from the acts upon which liability is premised" and has no "nexus to the specific harm suffered by the plaintiff" or to her prescribing physician, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003), such evidence, if admitted, bears only on punitive liability.

Bifurcation also is in the interests of judicial economy and efficiency because it offers a potentially shorter trial. Plaintiffs may recover punitive damages only if they first establish

---

[2] The counts in Plaintiffs' Complaint are incorrectly numbered, skipping directly from Count II (failure to warn) to Count IV (negligent misrepresentation).

compensatory liability. Evidence that might be admissible on the issue of punitive damages can await a second phase which should not occur, if at all, until after compensatory liability and damages are decided. Accordingly, if Defendants prevail in the compensatory phase, the trial will be shorter because the evidence, argument, and judicial resources required for a determination of punitive liability and damages will be obviated.

Regardless of whether Defendants are correct that constitutional due process concerns render dissimilar evidence unrelated to the specific harm alleged by Plaintiffs inadmissible for any purpose, including for punitive damages, such evidence is entirely irrelevant to compensatory liability and damages. That alone makes bifurcation necessary. While the admission of such evidence creates a substantial risk of incurable prejudice to Defendants, its exclusion from the compensatory phase of a properly bifurcated trial poses no risk of prejudice to Plaintiffs. If the trial is bifurcated, the Court would be better situated to assess the relevance and admissibility of evidence of dissimilar acts with no nexus to the specific harm sustained by Plaintiffs, the inadmissibility of which in the compensatory phase is beyond serious dispute.

For these reasons, the Court should exclude all evidence and argument relating solely to the punitive inquiry until after the jury returns a verdict in the compensatory phase.

## ARGUMENT

**I.  BIFURCATION IS NEEDED TO PREVENT UNFAIR PREJUDICE**

   **A.  Bifurcation to Prevent Unfair Prejudice Is Authorized By the Rules**

Fed. R. Civ. P. 42(b) authorizes courts to order separate trials of one or more issues or claims for "convenience, to avoid prejudice, or to expedite or economize." The Eleventh Circuit has held that Rule 42(b) does "not [set] a high standard," and that district courts have "broad discretion" in this area. *Harrington v. Cleburne County Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001) (approving bifurcation).

3

648846 v2

Three bellwether hormone therapy trials in the *Prempro* federal HT MDL have been bifurcated between compensatory and punitive issues. *See* Order, *Reeves v. Wyeth*, (June 8, 2006) (attached as Ex. 1); Order, *Rush v. Wyeth* (June 8, 2006) (attached as Ex. 2). In the first two MDL bellwether trials, the juries returned verdicts for Wyeth, and there was no Phase II.

No valid reason exists not to employ bifurcation here to prevent improper contamination of the jury's consideration of Plaintiffs' compensatory liability claims. Failure to insulate those claims from irrelevant and highly prejudicial evidence will inevitably consume considerable judicial resources in this Court and on appeal. Judicial efficiency now and in the future will be markedly enhanced by bifurcation.

    **B.    Bifurcation Is Essential to Prevent Irrelevant and Prejudicial Evidence and Argument From Tainting the Jury's Consideration of <u>Compensatory Liability and Damages</u>**

If Plaintiffs' case for compensatory liability and damages is not bifurcated from questions of punitive liability and damages, there will be a substantial risk that evidence and argument irrelevant to compensatory issues will be heard, resulting in incurable prejudice to Defendants that will need to be reviewed on appeal. Bifurcation of compensatory liability and damages issues from punitive liability and damages issues will prevent the passion and prejudice generated from the introduction of punitive evidence and argument from improperly influencing the jury's determination of compensatory liability and damages. Courts and commentators have long recognized that "[p]erhaps the most compelling reason to order a separate trial of punitive damages is the avoiding of prejudice," because "[i]ntroducing evidence of conduct necessary to support a punitive damage award could adversely affect the jury's determination on substantive liability and the corresponding amount of compensatory damages." John J. Kircher & Christine M. Wiseman, *Punitive Damages: Law & Practice* § 12:04, at 11 (2d ed. 2000). In *Campolongo v. Celotex Corp.*, 681 F. Supp. 261, 263 (D.N.J. 1988), the court, noting "the collective wisdom"

of federal and state courts, explained some of the compelling "policy reasons and concerns" for bifurcating such issues:

> Foremost, is the conduct of a trial free of the inflammatory influences that naturally flow from conduct-related proofs which possess the capacity to adversely affect a product-oriented proceeding through a disproportionate compensatory verdict. …
>
> Simply put, the severance of the punitive facet of damages from the compensatory claim with the concomitant elimination of conduct-related proofs guarantees, to the extent humanly possible, a fair compensatory award free of the taint and suspicion that pervades a verdict when all issues are litigated together.

*Id.*[3]

These observations also are borne out by empirical research. In a landmark study that compared the effect of bifurcating compensatory and punitive issues in a mock product liability trial, the investigators found that when the issues were bifurcated, the plaintiff prevailed 42.8% of the time; yet when the issues were tried together, the plaintiff prevailed 55.2% of the time — an increase of 12.4%. "This difference (55.2% versus 42.8%) was significant and indicates that defendants may indeed suffer from some prejudice in unitary trials that bifurcation could relieve." Stephan Landsman, et al., *Be Careful What You Wish For: The Paradoxical Effects of Bifurcating Claims for Punitive Damages*, 1998 WIS. L. REV. 297, 317 (1998). Likewise, mock jurors who heard punitive damages evidence and argument in a unitary trial also returned higher compensatory damages awards — "findings [that] signal the special role that punitive facts may play in producing prejudicial spillover" effects. *Id.* at 321.

---

[3] In *Campolongo*, no form of conduct evidence was admitted under the then-existing state law which permitted a failure to warn claim to be decided exclusively on a strict liability basis. Here, of course, Defendants do not seek bifurcation of all conduct evidence, but only that related solely to punitive issues. While the requested bifurcation is narrower here, *Campolongo* is instructive on the benefits of insulating a compensatory liability trial from the risk of an erroneous determination by the jury due to the admission of highly prejudicial evidence and argument relevant only to punitive liability.

"A sizeable and growing body of empirical evidence generally confirms the existence of these prejudices" where "punitive liability evidence improperly influences juries' decisions on compensatory liability and damages." Steven S. Gensler, *Prejudice, Confusion, and the Bifurcated Civil Jury Trial: Lessons from Tennessee*, 67 TENN. L. REV. 653, 666 (2000). Because "juries allow punitive damages issues (other than net worth) to improperly influence their compensatory liability verdicts and damage awards, … [t]rying punitive damages claims separately from compensatory claims can reduce this form of prejudice." *Id.* at 672. *See also* James Wm. Moore, *Moore's Fed. Practice* § 42.24[1] (3d ed. 2009) ("The primary reason for bifurcation of a punitive damages claim is that the prejudice to the defendants from the introduction of evidence on punitive damages frequently outweighs any inconvenience the plaintiffs might suffer in having to present proof of compensatory damages separately from the punitive damage evidence."); Robert L. Haig, *Bus. & Commercial Litig. in Fed. Cts.* § 42:10, at 304 (4th ed. 2005) ("Severing the question of compensatory liability from the punitive issues makes a lot of sense when the trial of the latter will involve presentation of various kinds of evidence that might be irrelevant to the plaintiff's right to compensation but that is likely to prejudice the jury against the defendant and thereby compromise the integrity of its determination of compensatory liability and damages."); Jane Mallor & Barry S. Roberts, *Punitive Damages: On the Path To A Principled Approach?*, 50 HASTINGS L.J. 1001, 1012 (1999) ("bifurcated trials are … a positive step toward a principled approach in that they help to avoid compromise on the liability decision and overly harsh penalties that might result from passion or prejudice"); James R. McKnown, *Punitive Damages: State Trends and Developments*, 14 REV. LITIG. 419, 446 (1995) (bifurcating "compensatory issues from punitive damage determinations" avoids "prejudice and bias"); Malcolm E. Wheeler, *The Constitutional*

*Case for Reforming Punitive Damages Procedures*, 69 VA. L. REV. 269, 321 (1983) ("Primarily, [bifurcation] would reduce the risk that inflammatory punitive damages evidence will cause the jury improperly to resolve liability issues against the defendant.").

Addressing the reasons for bifurcating compensatory and punitive issues, the court in *Bradfield v. Schwartz*, 936 So.2d 931, 938 (Miss. 2006), recognized the prejudicial effects that the introduction of punitive damages evidence can have in increasing the likelihood that the jury will return a verdict on compensatory liability against the defendant and in increasing the amount of such an award:

> [T]o try a case any other way would allow a jury to consider punitive damages evidence while determining the compensatory damage award.  This is a troubling scenario when one considers that under such procedure, not only is the jury subject to possibly returning an inflated compensatory damage award based on consideration of the wrong evidence, it may also forego a finding for the defendant altogether in those situations where the jury may have otherwise seriously considered finding for the defendant, by considering only the appropriate evidence as to fault/liability.

This Court may, and for compelling reasons should, order a bifurcation of compensatory and punitive issues to avoid such prejudicial error.

### C.  Compensatory Issues and Punitive Issues Involve Different Inquiries and Are Readily Amenable to Bifurcation

Legal and evidentiary considerations also support bifurcating the compensatory and punitive issues.  The legal standards that define compensatory liability differ from those that delineate punitive liability.  In Florida, a punitive damages award "requires evidence of 'intentional, wanton and malicious disregard' for the plaintiff's rights"; mere negligence is not enough. *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1312-13 (M.D. Fla. 2010).  Because negligence and punitive damages inquiries involve different legal standards, they are readily amenable to bifurcation.

7

Moreover, punitive damages may not be recovered unless Plaintiffs first carry their burden of proof on one or more claims for compensatory damages. *AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1355 (S.D. Fla. 2006) ("plaintiff's recovery of punitive damages is precluded by its failure to prove the essential element of damages" with respect to its underlying claims). Florida law also does not permit liability for allegedly inadequate prescription drug warnings in the absence of reliance by the plaintiff's prescribing physician on that warning. *See Simon v. Bartel*, 502 So. 2d 1011, 1012 (Fla. 3d DCA 1987) ("There is no cognizable cause of action for a mere wrong without damage."). Thus, liability for compensatory damages cannot be based upon alleged acts that the plaintiff's physician did not rely upon in prescribing the medication to Plaintiff.

The legal attributes of punitive damages also are logically sequential. Because there is no independent claim for punitive damages, the inherent structure of a punitive damages claim under Florida law also supports deferring punitive issues until after compensatory liability, if any, is established. In this respect, Florida law dovetails with due process, because issues relating to ratio can arise only after the denominator — the amount of compensatory damages — is known. *See State Farm*, 538 U.S. at 426.

Because Plaintiffs' punitive damages claim is entirely dependent upon the threshold determination of the compensatory claim, as a practical matter it also makes sense to bifurcate compensatory and punitive issues. In this situation, bifurcation is warranted under Rule 42 both in furtherance of "convenience" and to avoid "prejudice." Allowing a jury considering compensatory liability and damages to hear evidence and argument irrelevant to their determination of such issues could only prolong and confuse the issues in the compensatory phase, while at the same time incurably prejudicing Defendants.

8

## II. BIFURCATION IS THE MOST EFFICIENT WAY TO HELP ASSURE THAT DEFENDANTS' CONSTITUTIONAL RIGHTS ARE PROTECTED

The federal constitutional guarantee of due process requires that evidence and argument relevant solely to punitive issues be admitted only after the resolution of compensatory issues. "A court, upon request, *must* protect against [the] risk" of juror "confusion occurring" in cases involving punitive damages, *Philip Morris USA v. Williams*, 549 U.S. 346, 357 (2007) (emphasis added), and bifurcation of compensatory and punitive issues "accomplishes the goals of … lack of confusion" and "fundamental fairness." *Campolongo*, 681 F. Supp. at 263; *see Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (because the plaintiffs' product liability theory "did not implicate any inquiry into [the defendant's] conduct, allowing the question of punitive damages and its corresponding inquiry into conduct to be litigated at the liability stage of the trial would confuse the jury and unfairly prejudice" the defendant). In punitive damages cases, courts are constitutionally mandated to implement procedures that minimize — not maximize — the likelihood of unconstitutional awards. "Although the States have some flexibility to determine what *kind* of procedures they will implement, federal constitutional law obligates them to provide *some* form of protection in appropriate cases." *Philip Morris*, 549 U.S. at 357 (emphasis in original).

Any procedure short of bifurcating the punitive issues runs the great risk of unfair prejudice to Defendants due to the admission of irrelevant evidence and argument in the compensatory phase. Jury instructions are inadequate to counter such prejudice. The Supreme Court is "skeptical that verbal formulations," such as limiting instructions, "are the best insurance against unpredictable outliers." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504 (2008). Jury instructions "can go just so far in promoting systemic consistency." *Id.*; *see also* Wheeler, 69 VA. L. REV. at 291 ("[T]he jury in a punitive damages case may hear ... potentially

9

prejudicial evidence ["wealth and malice"] before deciding the issues of liability and compensatory damages. Although the defendant can request a limiting instruction, the harm may be irreparable.").

Where punitive damages are at issue, trial procedures must protect "the fundamental due process concerns to which our punitive damages cases refer — risks of arbitrariness, uncertainty and lack of notice." *Philip Morris*, 549 U.S. at 354. Cabining the introduction of evidence and argument relevant only to either the punitive or compensatory phase helps to ensure that the jury will not use such evidence for anything other than its limited purpose. That is especially true of evidence of out-of-state marketing, given its lack of causal connection to anyone other than strangers to this case.

A bifurcation that combines compensatory liability, compensatory damages, and punitive liability in one phase, and reserves only the amount of punitive damages for a second phase, does nothing to prevent the unfair prejudice and infringements of due process violations of Defendants' fundamental rights. The problems inherent in combining the issues of compensatory liability, compensatory damages, and punitive liability in one phase — *i.e.*, having the trial judge prematurely decide whether evidence and argument irrelevant to compensatory issues can be heard on the question of punitive liability, with the attendant risk that the jury will impose compensatory liability or compensatory damages based on evidence inadmissible for that purpose — is not alleviated by bifurcating only the amount of punitive damages.

To the contrary, a jury deliberation limited to the amount of money that should be imposed — divorced from a simultaneous deliberation among the jurors as to whether the conduct meets the legal standard for punitive damages — increases the prejudice to Defendants by disempowering jurors who believe that Defendants' conduct was lawful and/or not willful and

wanton, and who lost that issue, from having any meaningful input into the amount of punitive damages. Defendants therefore oppose any bifurcated phase limited solely to the amount of punitive damages.

### III.  BIFURCATION IS IN THE INTEREST OF JUDICIAL EFFICIENCY

Without carrying their burden of proof on compensatory liability and damages, Plaintiffs cannot obtain a punitive award. The additional evidence that may be admissible on the issue of punitive liability and damages ought to await a second phase that occurs, if at all, after compensatory liability and damages are decided. Should Defendants prevail in the compensatory phase, then the trial will be shorter because the evidence, argument, and judicial resources required to determine punitive liability and damages will be avoided. Bifurcating compensatory and punitive issues "accomplishes the goals of … judicial economy," *Campolongo*, 681 F. Supp. at 263, and "the elimination of [punitive] proofs" from "the compensatory damage aspect of the case" "will further the convenience of all concerned as the result of the diminution of the quantum of proofs required, expenses of trial and jury utilization." *Id.* at 266.

For example, should the jury find in Defendants' favor in the compensatory phase, then constitutional due process issues concerning the inadmissibility of dissimilar evidence bearing no nexus to the specific harm suffered by Plaintiffs, or as to evidence regarding harm to non-parties or evidence regarding extra-territorial conduct not occurring in Florida need not be argued before or decided by the Court. The presentation of evidence deemed to be admissible only on the punitive issues need not consume the time of the Court or of the jurors. Jury instructions setting forth the standards that govern punitive liability and constrain the imposition of punitive damages need not be argued before or decided by the Court at a charge conference. Lawyer argument and the jury's deliberation on punitive issues can all be avoided.

11

All of these salutary benefits in judicial efficiency have been realized in prior HT cases that were tried in bifurcated compensatory and punitive phases before the MDL court. There is every reason to think that they can be achieved here, too.

## CONCLUSION

For all of these reasons, the Court should bifurcate the trial of this case so as to exclude all evidence and argument relating solely to a determination of punitive liability and punitive damages until after the jury returns a verdict on the issues of compensatory liability and compensatory damages, if any.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that counsel for Defendants has conferred with Plaintiffs' counsel, but they were not able to agree upon a resolution to this motion.

## LOCAL RULE 3.01(j) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Middle District of Florida, Defendants request oral argument on this Motion and estimate that the time required for oral argument to be 2 hours.

Respectfully submitted,

By: /s/Hildy M. Sastre
HILDY M. SASTRE, ESQ.
Fla. Bar No. 026492
Email: hsastre@shb.com
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone (305) 358-5171
Facsimile (305) 358-7470
*Counsel for Defendants*

648846 v2

Case No. 8:06-cv-00429-SDM-AEP

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2011, I electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

## SERVICE LIST

Paul Cavonis, Esq.
DELOACH & HOFSTRA, PA
8640 Seminole Boulevard
Seminole, FL 33772
pcavonis@dhstc.com

Randall Lakey, Esq.
Jeff Gibson, Esq.
Gregory Laker, Esq.
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
rlakey@cohenandmalad.com
jgibson@cohenandmalad.com
glaker@cohenandmalad.com

s/ Hildy M. Sastre_____<br>HILDY M. SASTRE

648846 v2